397 So.2d 657 (1981)
Andrew SANDEGREN et al., Appellants,
v.
STATE of Florida ex rel. SARASOTA COUNTY PUBLIC HOSPITAL BOARD, Appellee.
No. 58868.
Supreme Court of Florida.
March 12, 1981.
Rehearing Denied May 20, 1981.
*658 Richard E. Nelson and Robert C. Widman of Nelson, Hesse, Cyril, Weber, Smith & Widman, Sarasota, for appellants.
William T. Harrison, Jr., A. Lamar Matthews, Jr. and J. Michael Hartenstine of Williams, Parker, Harrison, Dietz & Getzen, Sarasota, for appellee.
William J. Roberts of Roberts & Egan, Tallahassee, for State Ass'n of County Commissioners, amicus curiae.
McDONALD, Justice.
This appeal is from the issuance of a writ of mandamus by the Twelfth Judicial Circuit Court, Sarasota County. The Second District Court of Appeal transferred the case to this Court because the circuit court expressly upheld the constitutionality of chapter 394, Florida Statutes (1977). We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. (1972).
Acting under chapter 394, the Baker Act, the West Coast Mental Health Board (board) contracted with the Sarasota Guidance Clinic, Inc. (clinic), to provide mental health services to Sarasota County. Unable to perform the services directly, the clinic subcontracted with the relator, Sarasota County Public Hospital (hospital), for that institution to treat Baker Act patients.
As part of its comprehensive mental health plan, chapter 394 requires that local governments match state funds for community mental health services on a three to one basis. Because Sarasota County never provided any funding for the program, the hospital sought a writ of mandamus against Sarasota County (county), the board, and the clinic, asking for payment of the county's twenty-five-percent share of costs for services rendered by the hospital, under its contract, from July 1, 1976 through May 16, 1978. At trial the court upheld the constitutionality of chapter 394, found that the county had a clear legal duty to match state funds, and ordered the county to pay $182,994.47 directly to the hospital.
Because the case is before us on the constitutional validity of chapter 394 of the Florida Statutes generally, and section 394.76(9) particularly, we address that issue first.
Appellants claim that chapter 394 unconstitutionally delegates legislative power and infringes on the power of local *659 taxing authorities. As this Court has previously stated,
the Legislature may delegate to authorized officials and agencies the authority to promulgate subordinate rules within prescribed limits and to determine facts to which the established policies of the Legislature are to apply. What the Legislature may not delegate is the power to enact laws or to declare what the law shall be or to exercise unrestricted discretion in applying the law.
Florida Welding and Erection Service, Inc. v. American Mutual Insurance Co., 285 So.2d 386, 388 (Fla. 1973) (footnotes omitted). Chapter 394 gives the Department of Health and Rehabilitative Services rulemaking power and assigns numerous responsibilities to that agency and to the various district mental health boards. The chapter also enumerates guidelines with which those agencies must comply. See §§ 394.457, 394.459, 394.463, 394.75, 394.76, Fla. Stat. (1977). Appellants have shown no improper delegation either on the face of the statute or as applied to them.
Appellants, likewise, have not shown that the legislature has improperly infringed on local taxing power. Chapter 394 sets out a plan by which comprehensive mental health services are provided on a local basis. Under this chapter, the various local governments are benefitted by having the mental health needs of their residents attended to. There is nothing in the state constitution which prohibits the legislature from enacting laws requiring the expenditure of local funds to support programs to the extent that such programs serve a local purpose. See Board of Public Instruction v. State Treasurer, 231 So.2d 1 (Fla. 1970).
Section 394.76(9), Florida Statutes, (1977), provides that:
State funds for community mental health services shall be matched by local matching funds on a three to one basis respectively. Governing bodies within a district or subdistrict shall be required to participate in the funding of mental health services under the jurisdiction of said governing body. The amount of the participation shall be at least that amount which, when added to other available local matching funds, is necessary to match state funds.
(emphasis supplied). "Governing body" is defined as the "chief legislative body of a county" or "a board of county commissioners." § 394.67(2), Fla. Stat. (1977). The legislature has decided, therefore, that local governments must bear a share of the cost of mental health services. Although local governing bodies are given the right to review, comment on, and approve plans drawn up by district mental health boards,[1] this does not give them the right to refuse to fund mental health programs as required by chapter 394. The judgment of a local governing body as to the necessity for such programs is not material when the legislature has declared that those programs are necessary and that a share of the costs should be locally funded. See Board of Com'rs v. Board of Pilot Com'rs, 52 Fla. 197, 42 So. 697 (1906). In enacting sections 394.453 and 394.66(1) and (5), Florida Statutes (1977), the legislature declared a necessity for mental health services and its intent that local governments participate in the financial responsibility for such services. The funding of local programs, therefore, has been made a ministerial, rather than a discretionary, act and is enforceable through mandamus. Mandamus will lie to compel performance of a clear legal duty. State ex rel. Buckwalter v. City of Lakeland, 112 Fla. 200, 150 So. 508 (1933). In our opinion, Sarasota County has a clear legal duty to fulfill the obligation imposed by this statute.
We next turn our attention to the issue of whether the judgment of mandamus should be vacated because the procedure set forth in rule 1.440, Florida Rules of Civil Procedure,[2] for setting trials was not *660 followed. There was no order setting this case for trial. The notice of trial consisted of a letter from relator's attorney to appellants' counsel advising that the trial judge had set a certain day aside for trial. After complaining of the scheduled trial date, appellants filed a motion for continuance which was denied. In that motion there was no complaint that the trial judge had not followed rule 1.440. When the judge denied the continuance, he indicated that he would grant appellants additional time during the trial, if it were needed. Appellants did not request more time during or after the trial.
In this particular case we do not disturb the judgment because it was evident that a trial would commence unless the motion for continuance were granted and because the appellants were afforded additional time to conclude the case if requested. At the same time we wish to announce that we expect the courts of this state to strictly follow rule 1.440 when setting cases for trial.
The appellants contend it was error to deny the continuance.[3] A motion for a continuance is addressed to the sound discretion of the trial court. In re Gregory, 313 So.2d 735 (Fla. 1975); State v. Florida State Turnpike Authority, 134 So.2d 12 (Fla. 1961); Hall v. Florida State Drainage Land Co., 89 Fla. 312, 103 So. 828 (1925). See 30 Fla. Stat. Ann. 510 (1967), Comment rule 1.460. A trial court's decision regarding a continuance will not be reversed "unless there has been a palpable abuse of such discretion ... clearly and affirmatively shown by the transcript of the record." 89 Fla. at 316, 103 So. at 830. No such abuse has been shown in the instant case.
We also find that the court properly admitted into evidence the exhibit about which appellants complain. This exhibit is a sixteen-column compilation of dates, total charges, and payments from various sources for over one thousand Baker Act patients treated by the hospital during the pertinent time. The hospital's business office director admitted that the chart was completed shortly before trial. Appellants claim that the exhibit is hearsay for which no exception to the hearsay rule exists. We disagree.
Section 92.36(2), Florida Statutes (1977), in effect at the time of this trial, provides that business records may be admitted if: (1) the custodian testifies as to their identity and mode of preparation; (2) they were made in the regular course of business, near the time of occurrence; and (3) in the court's opinion, the sources of information, time, and method of preparation justify admission. The hospital's business director, as custodian of the hospital's records, testified that the underlying data upon which the questioned exhibit was based was prepared and kept in the regular course of business.[4] By admitting the exhibit, the trial judge impliedly found the records from which the exhibit was compiled to be otherwise admissible. *661 The hospital's business records, themselves, therefore, could have been admitted under section 92.36.
As stated before, however, these records pertained to more than a thousand patients. When voluminous documents are involved it is proper, indeed it is sometimes necessary for the smooth running of a trial, that other evidence be allowed by the testimony of a competent witness who can sum up the total mass. 4 J. Wigmore, Evidence § 1230 (Chadbourne rev. 1972). The courts of this state have adopted this rule of convenience. See Scott v. Caldwell, 160 Fla. 861, 37 So.2d 85 (1948); Perma Spray Manufacturing Co. v. La France Industries, Inc., 161 So.2d 13 (Fla.3d DCA 1964)[5], cert. denied, 168 So.2d 147 (Fla. 1964). In deciding to admit the challenged exhibit, the court stated that the exhibit would be accepted because "otherwise we'll be here several years sorting it all out and getting the same result." Because the records, themselves, would have been admissible, and because those records were so voluminous, we hold that the trial court, in its discretion, properly admitted the exhibit into evidence.
The final judgment of the trial court is affirmed.
It is so ordered.
SUNDBERG, C.J., and BOYD, OVERTON, ENGLAND and ALDERMAN, JJ., concur.
ADKINS, J., dissents.
NOTES
[1] § 394.75(1)(b), Fla. Stat. (1977).
[2] Rule 1.440, Setting Case for Trial, reads as follows:

(a) When at Issue. An action is at issue after any motions directed to the last pleading served have been disposed of or, if no such motions are served, 20 days after service of the last pleading. The party entitled to serve motions directed to the last pleading may waive the right to do so by filing a notice for trial at any time after the last pleading is served.
(b) Notice for Trial. Thereafter any party may file and serve a notice that the action is at issue and ready to be set for trial. The notice shall include an estimate of the time required and whether it is to be tried by a jury or not. The clerk shall then submit the notice and the case file to the court.
(c) Setting for Trial. If the court finds the action ready to be set for trial, it shall enter an order fixing a date for trial. Trial shall be set not less than thirty days from the service of the notice specified in subdivision (b). By giving the same notice, the court may set an action for trial on its own motion. In law actions in which the damages are not liquidated, the order setting an action for trial shall be served on parties who are in default in accordance with Rule 1.080(a).
(d) Applicability. This rule does not apply to actions to which Chapter 51, Florida Statutes 1967 applies.
[3] When moving for continuance, defense argued a motion to raise additional defenses and a motion to state a counterclaim. The denial of those motions is not challenged here.
[4] The hospital's contract with the clinic required billing within 10 days after rendering service. Charges, therefore, had to be recorded at or near time of rendition.
[5] Perma Spray contains some language which might be interpreted as requiring the presence of the basic records in court. Such is not required, however, when both parties have had access to those records prior to trial. In the instant case, defense filed numerous requests for production, one of which resulted in a protective order to preserve the confidentiality of patient records as required by §§ 458.16 and 395.202(1), Fla. Stat. (1977). The instant record shows, however, that the hospital provided access to all parts of the records pertinent to this case.