DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

SARASOTA DOCTORS HOSPITAL, INC., and ENGLEWOOD COMMUNITY
HOSPITAL, INC.,

Appellants,

v.

SARASOTA COUNTY and SARASOTA COUNTY PUBLIC HOSPITAL
DISTRICT,

Appellees.

VENICE HMA, LLC, d/b/a VENICE REGIONAL MEDICAL CENTER,

Appellant,

v.

SARASOTA COUNTY and SARASOTA COUNTY PUBLIC HOSPITAL
DISTRICT,

Appellees.

Nos. 2D2022-4019, 2D2022-4020
CONSOLIDATED

_____

July 31, 2024

Appeals from the Circuit Court for Sarasota County; Andrea McHugh,
Judge.

Stephen A. Ecenia, J. Stephen Menton, and Jennifer F. Hinson of Rutledge Ecenia, P.A., Tallahassee, for Appellants Sarasota Doctors Hospital, Inc., and Englewood Community Hospital, Inc.

Geoffrey D. Smith and Stephen B. Burch of Smith & Associates, Melbourne, for Appellant Venice HMA, LLC, d/b/a Venice Regional Medical Center.

Frederick J. Elbrecht, County Attorney, and Karl A. Senkow, Chief Deputy County Attorney, Office of the County Attorney, Sarasota; Raymond T. Elligett, Jr., and Amy S. Farrior of Buell & Elligett, P.A., Tampa, for Appellee Sarasota County.

David A. Wallace of Bentley Goodrich Kison P.A., Sarasota, for Appellee Sarasota County Public Hospital District.

ATKINSON, Judge.

In two separate appeals,[1] Sarasota Doctors Hospital, Inc., Englewood Community Hospital, Inc., and Venice HMA, LLC, d/b/a Venice Regional Medical Center, (collectively, the Hospitals) appeal the trial court's final judgment in favor of Sarasota County (the County) and the Sarasota County Public Hospital District (the District). Following a nonjury trial, the trial court concluded that the County's sovereign immunity barred the Hospitals' declaratory judgment claims alleging that the County was obligated to reimburse them for the cost of providing indigent care pursuant to a special act of the Florida Legislature. While we agree with the trial court that the Hospitals failed to prove that they complied with the terms of the special act for purposes of obtaining reimbursement, we disagree that sovereign immunity bars their claims under the special act's indigent care provision. Therefore, we affirm in

---

[1] We previously consolidated these appeals for record and panel purposes. We now consolidate the two appeals for purposes of this opinion.

part and reverse in part the trial court's final judgment and remand for entry of a corrected final judgment consistent with this opinion.[2]

## **Background**

This case previously came before the court in an extraordinary writ proceeding, in which we explained the genesis of this dispute.

> In 2003 the Florida Legislature repealed numerous special and local acts enacted between 1949 and 2000 and recodified them as a single Special Act that recreated and provided for the governing of the Sarasota County Public Hospital District (District). *See* ch. 2003-359, § 2, Laws of Fla. Under the Special Act, the District, an "independent special district" contiguous with Sarasota County, is governed by a Hospital Board (Board). Charter § 1. Every month, the Board is authorized to certify to the Sarasota Board of County Commissioners (BOCC) a list of medically indigent persons treated by Board-managed (i.e., public) hospitals during the previous month, together with the itemized charges for those persons' care. Charter § 8(9). Within forty-five days the BOCC "shall" remit to the Board the amount requested. *Id.* The statute authorizes the Board to impose up to two mils of an ad valorem tax throughout the county. Charter § 8(8).
>
> The statute includes private hospitals within its ambit as well. Thus, upon appropriate certification,
>
> > [t]he said Board of County Commissioners shall in like manner reimburse any other hospital in Sarasota County, approved by the State Board of Health, for hospital services rendered to medically indigent persons as herein defined, upon like certification by such hospital and at such rates as shall not exceed those prescribed for such patients by hospitals owned and operated by said Hospital Board.
>
> Charter § 8(9).

---

[2] We affirm the portion of the final judgment in favor of the District on the sole basis that, by the time of trial, the Hospitals no longer had a pending claim against the District.

Some three years before the Special Act's 2003 recodification, the BOCC had adopted as a county ordinance the special and local acts described above. *See* Code of Ordinances of Sarasota County, ch. 4, art. II, § 4-24(i), -31, adopted Sept. 13, 2000. The county ordinance and the Special Act are virtually identical in content, including the sequence of their presentation.

In 2011, the Hospitals filed complaints against Sarasota County and the District seeking declaratory relief pursuant to chapter 86, Florida Statutes. The Hospitals alleged that the County had been collecting ad valorem taxes as imposed by the Board but had been refusing to pay their submitted requests for reimbursements under the Special Act, which the Hospitals had begun issuing in late 2008 or early 2009, according to the respective complaints. They sought a declaration to determine their rights under the Special Act, to declare that the County is obligated to reimburse them for indigent hospital services, to declare that the County is obligated to reimburse the Hospitals for their prior invoices, and to grant any other relief the circuit court deemed appropriate. The County raised various affirmative defenses, including sovereign immunity, and several counterclaims, including a challenge to the constitutionality of the Special Act.

*Sarasota Cnty. Pub. Hosp. Dist. v. Venice HMA, LLC*, 325 So. 3d 334, 337–38 (Fla. 2d DCA 2021) (footnotes omitted).

Initially, the trial court agreed with the County and the District and entered summary judgment declaring that the Special Act's indigent care provision violated the Florida Constitution's prohibition against special laws granting a privilege to a private corporation. *See* art. III, § 11(a)(12), Fla. Const. On appeal, this court also agreed, *see Venice HMA, LLC v. Sarasota County*, 198 So. 3d 23, 31 (Fla. 2d DCA 2015), but the Florida Supreme Court did not, *see Venice HMA, LLC v. Sarasota County*, 228 So. 3d 76, 84 (Fla. 2017) (holding that the Special Act's indigent care provision did not unconstitutionally grant a privilege to a private corporation because the special law, which by definition only operates in

4

a specific subdivision of the State, applies to all hospitals (public and private) in Sarasota County).

On remand, the County and the District attempted two more times to obtain summary judgment but on the ground that sovereign immunity barred the Hospitals' claims. On both attempts, the trial court declined to enter summary judgment due to the existence of genuine issues of material fact. After the denial of its second attempt at summary judgment on sovereign immunity grounds, the County petitioned this court for a writ of prohibition in which it argued that the trial court was exceeding its jurisdiction in light of the County's claimed immunity. This court denied the petition due to the existence of a factual dispute and also concluded that the County was not entitled to certiorari relief. *See Sarasota Cnty. Pub. Hosp. Dist.*, 325 So. 3d at 343–45, 347 (reasoning that "there is a sharp factual dispute that precludes relief in prohibition" and concluding that the County did not demonstrate irreparable harm or a departure from the essential requirements of law to warrant certiorari relief).

The parties proceeded to a nonjury trial, following which the trial court entered the final judgment under review in this appeal. The trial court concluded that the Florida Supreme Court's decision in the prior appeal, although the law of the case, did not preclude the County from asserting sovereign immunity as a defense. The trial court further concluded that sovereign immunity barred the Hospitals' claims because there was no valid waiver of immunity, whether through a general law passed by the legislature or by means of an express, written contract. Finally, the trial court concluded that even if the Hospitals had proven that an express, written contract existed such that sovereign immunity had been waived, the Hospitals did not prove their entitlement to

5

reimbursement for their prior invoices they submitted to the County because they had not complied with the terms of the Special Act's indigent care provision.

## Analysis

We review the trial court's factual findings for competent substantial evidence and its legal conclusions de novo. *See Wootton v. Iron Acquisitions, LLC*, 338 So. 3d 425, 427 (Fla. 2d DCA 2022) ("When a decision in a non-jury trial is based on findings of fact from disputed evidence, it is reviewed on appeal for competent, substantial evidence. . . . However, where a trial court's conclusions following a non-jury trial are based upon legal error, the standard of review is de novo." (quoting *Jasser v. Saadeh*, 91 So. 3d 883, 884 (Fla. 4th DCA 2012))); *see also Lee Mem'l Health Sys. v. Hilderbrand*, 304 So. 3d 58, 60 (Fla. 2d DCA 2020) ("The issue of a party's entitlement to sovereign immunity is a legal issue subject to the de novo standard of review." (citing *Plancher v. UCF Athletics Ass'n*, 175 So. 3d 724, 725 n.3 (Fla. 2015))); *SC Mota Assocs. Ltd. P'ship v. Mota Pizza Rustica Corp.*, 358 So. 3d 823, 826 (Fla. 3d DCA 2023) ("Whether the law of the case doctrine applies is a question of law, and therefore our standard of review is de novo." (quoting *Pompano Masonry Corp. v. Anastasi*, 125 So. 3d 210, 212 (Fla. 4th DCA 2013))).

## I.

The Hospitals first argue that the trial court erred because the Florida Supreme Court's decision in the prior appeal foreclosed the County's sovereign immunity defense under the law of the case doctrine. "The doctrine of the law of the case requires that questions of law actually decided on appeal must govern the case in the same court and the trial court, through all subsequent stages of the proceedings." *Fla.*

6

*Dep't of Transp. v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001).  The doctrine does not apply here because the supreme court did not decide any issue regarding sovereign immunity in the prior appeal.  *See Venice HMA*, 228 So. 3d at 83–84, 84 n.4 (holding the Special Act's indigent care provision did not violate article III, section 11(a)(12) of the Florida Constitution, did not unconstitutionally violate the County's home-rule powers, and was not void for vagueness).  That the supreme court concluded the Special Act is constitutional on specified grounds has no bearing on whether sovereign immunity protects the County from liability under the Special Act.  And there is nothing in the supreme court's decision or the record before us to indicate that the supreme court even implicitly considered sovereign immunity in deciding the other constitutional questions.  *Cf. Juliano*, 801 So. 2d at 106 ("Additionally, the law of the case doctrine may foreclose subsequent consideration of issues implicitly addressed or necessarily considered by the appellate court's decision.").  As such, the Hospitals' law of the case argument fails.

## II.

The Hospitals correctly argue in the alternative that sovereign immunity did not bar their claims.  They assert that sovereign immunity is either not applicable or was waived.  There are two generally recognized ways in which sovereign immunity may be waived, thereby providing consent for the sovereign to be sued.[3]  First, under the constitution, the legislature may enact a general law expressly waiving

---

[3] Although not a waiver, another scenario exists in which sovereign immunity does not apply.  The doctrine does not bar claims based on the federal or state constitutions.  *See Dep't of Revenue v. Kuhnlein*, 646 So. 2d 717, 721 (Fla. 1994) ("Sovereign immunity does not exempt the State from a challenge based on violation of the federal or state constitutions, because any other rule self-evidently would make constitutional law subservient to the State's will.").

sovereign immunity. Art. X, § 13, Fla. Const. ("Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating."); *see Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 472 (Fla. 2005) ("[A]ny waiver of sovereign immunity must be clear and unequivocal." (first citing *Manatee County v. Town of Longboat Key*, 365 So. 2d 143, 147 (Fla. 1978); and then citing *Rabideau v. State*, 409 So. 2d 1045, 1046 (Fla. 1982))). Second, there is no sovereign immunity when a state entity enters into an express, written contract that the legislature authorized the state entity to enter into by general law. *See Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5–6 (Fla. 1984) ("We therefore hold that where the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract."); *see also Fla. Dep't of Transp. v. Schwefringhaus*, 188 So. 3d 840, 844 (Fla. 2016) (describing *Pan-Am Tobacco* as having "found an implied waiver of sovereign immunity for contract claims"); *Town of Gulf Stream v. Palm Beach County*, 206 So. 3d 721, 726 (Fla. 4th DCA 2016) ("Sovereign immunity may be waived only by general law or by express contract.").

The County trains its focus on the issue of waiver, arguing that the "threshold question" is whether the County ever entered into an express, written contract with the Hospitals. Arguing it did not, the County asserts that the absence of a contract supports its position that sovereign immunity was never waived and, consequently, that the judgment must be affirmed. But before determining whether sovereign immunity has been waived, it must be determined whether sovereign immunity applies to the cause of action in the first place. Answering that question in the negative, we decline to reach the question of whether

8

there was an express written contract that served as a waiver of sovereign immunity.

The determination of whether sovereign immunity applies to the Hospitals' claims requires an analysis of the types of causes of action to which the government is immune under the doctrine of sovereign immunity. Sovereign immunity does not bar any and all suits against a government entity or officer. It bars suit *against the sovereign* and shields the sovereign from liability for *sovereign action*. However, when the gravamen of the complaint is that the governmental actor is acting in derogation of its legal authority or failing to act in spite of a legal mandate requiring action on the part of the governmental entity or officer—that its conduct is ultra vires—sovereign immunity is not a bar to such a claim. The government does not enjoy immunity from suit or liability in such a scenario because the cause of action is not based upon liability of the sovereign; rather, the cause of action is premised on a theory that the governmental actor's conduct is ultra vires and therefore he or she is not being sued in the capacity of a sovereign but rather as a rogue governmental actor which must be compelled to conform its conduct to the prescriptions of the law. In other words, sovereign immunity does not apply because the suit is not against the sovereign at all. A government entity, merely by virtue of being a government entity, is not acting in all places and all times as a sovereign without regard to the nature and circumstances of its actions. "Political entities only have sovereign immunity where they are sovereign . . . ." *Joiner v. Pinellas County*, 279 So. 3d 860, 866 (Fla. 2d DCA 2019); *see also id.* at 867 (Casanueva, J., concurring) ("In my view, the analysis of this issue turns in part on whether, as a matter of law, the asserting county, Pinellas County, is operating as a sovereign in this instance."). And, relevant

here, political entities and governmental actors only have sovereign immunity when they are acting as a sovereign—and do not enjoy such immunity when they are not.

By recognizing that sovereign immunity is not applicable to every type of suit that could be brought against a governmental entity, this court breaks no new ground. Rather, the concept that sovereign immunity does not apply to causes of action premised upon a governmental actor's ultra vires conduct is not revolutionary but rather finds its origins in the decisional law recognizing the common law doctrine of sovereign immunity and assessing its boundaries. For example, the United States Supreme Court has long recognized that a suit to enforce a government official's actions that are beyond the express authority conferred upon him or her by statute is not a suit against the sovereign that is barred by sovereign immunity.

> There may be, of course, suits for specific relief against officers of the sovereign which are not suits against the sovereign. . . . [W]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are ultra vires his authority and therefore may be made the object of specific relief.

*Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949); *see also Dugan v. Rank*, 372 U.S. 609, 620–22 (1963) (noting a "general rule" that a suit is "against the sovereign" if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration" or "if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act' " but then noting an exception to the general rule for "action by officers beyond their statutory powers" in which "the officer's action 'can be made the basis of

10

a suit for specific relief against the officer as an individual' " (first quoting *Land v. Dollar*, 330 U.S. 731, 738 (1947); then quoting *Larson*, 337 U.S. at 704; and then citing and quoting *Malone v. Bowdoin*, 369 U.S. 643, 647 (1962))).[4]  In other words, when a governmental actor exceeds the authority expressly conferred upon it by law, that entity or person is no longer acting as the sovereign, and as a result, an action premised on grounds that such authority has been exceeded is not deemed an action against the sovereign to which sovereign immunity applies.  *See Houston v. Ormes*, 252 U.S. 469, 472 (1920).  "[A] suit brought by the person entitled to the performance of the duty against the official charged with its performance is not a suit against the government."  *Id.*; *see also Minnesota v. Hitchcock*, 185 U.S. 373, 386 (1902) (describing that "cases in which officers of the United States are sued, in appropriate form, to compel them to perform some ministerial duty imposed upon them by law, and which they wrongfully neglect or refuse to perform," "would not

---

[4] Courts have recognized that Congress codified the principles expressed in *Larson* and *Dugan* as applied to certain defendants and actions, *see* 5 U.S.C. § 702 (1976), but in so doing neither expanded sovereign immunity nor abrogated the *Larson* framework as it applies to cases not covered by the statute—leaving unaltered the conception of sovereign immunity which excludes from its ambit those suits against governmental officers acting "ultra vires of statutorily delegated authority" or in violation of the Constitution because they "are not suits against the sovereign."  *See E.V. v. Robinson*, 906 F.3d 1082, 1090–93 (9th Cir. 2018) (citing *Larson*, 337 U.S. at 689–90) (explaining that "since 1976 federal courts have looked to § 702 . . . to serve the purposes of the [*Larson* exceptions] in suits against federal officers" but recognizing that the court has "consistently applied the *Larson* framework" where section 702 does not apply (alteration in original) (quoting *E.E.O.C. v. Peabody Western Coal Co.*, 610 F.3d 1070, 1085 (9th Cir. 2010)))); *Made in the USA Found. v. United States*, 242 F.3d 1300, 1308 n.20 (11th Cir. 2001) (noting that § 702 did not apply but that the "*Larson–Dugan* exception permits suits to go forward alleging that a government's official's actions were unconstitutional or beyond statutory authority").

be deemed suits against the United States within the rule that the government cannot be sued except by its consent"); *cf. Neapolitan Enters., LLC v. City of Naples*, 185 So. 3d 585, 593 (Fla. 2d DCA 2016) (rejecting a municipality's separation of powers defense because the plaintiff "alleged that the [city official] engaged in an ultra vires act" and explaining that "[a] municipality 'engages in an "ultra vires" act when it lacks the authority to take the action under statute or its own governing laws' " (quoting *Liberty Counsel v. Fla. Bar Bd. of Governors*, 12 So. 3d 183, 191–92 (Fla. 2009))).

Sovereign immunity was part of the English common law that has been adopted by the Florida Legislature.  *See Am. Home Assurance Co.*, 908 So. 2d at 471; *see also* § 2.01, Fla. Stat. (2011).  Predicated on the principle that "the King can do no wrong," the doctrine provides that "a sovereign cannot be sued without its own permission," *Am. Home Assurance Co.*, 908 So. 2d at 471, and affords "both an immunity from liability and an immunity from suit," *Fla. Highway Patrol v. Jackson*, 288 So. 3d 1179, 1185 (Fla. 2020).  In Florida, the State is the sovereign, *see Univ. of Fla. Bd. of Trs. v. Rojas*, 351 So. 3d 1167, 1170 (Fla. 1st DCA 2022) ("Outside of claims brought under the federal or state constitutions, sovereign immunity bars suit against the State."), but the State's sovereign immunity also extends to its subdivisions, *see Manatee County*, 365 So. 2d at 147.

It should come as no surprise that causes of action such as mandamus and quo warranto have comfortably coexisted in the common law with the doctrine of sovereign immunity.  *See, e.g., City of Bradenton v. Johnson*, 989 So. 2d 25, 26 (Fla. 2d DCA 2008) ("[M]andamus is a common law remedy to enforce an established legal right by compelling a public officer or agency to perform a legally required ministerial duty."

12

(first citing *Smith v. State*, 696 So. 2d 814, 815 (Fla. 2d DCA 1997); and then citing *Plymel v. Moore*, 770 So. 2d 242, 246 (Fla. 1st DCA 2000))); *Maloy v. Seminole County*, 264 So. 3d 370, 372 (Fla. 5th DCA 2019) ("Mandamus is a common law remedy used to enforce an established legal right by compelling a person in an official capacity to perform an indisputable ministerial duty required by law." (quoting *Poole v. City of Port Orange*, 33 So. 3d 739, 741 (Fla. 5th DCA 2010))).  Properly understood, petitions for writs of mandamus and quo warranto are "not suits against the sovereign."  *Larson*, 337 U.S. at 689.  And a writ of mandamus, "a recognized remedy to require a public official, who is clothed with the authority, to discharge his duty," *see Alexander v. City of Coral Gables*, 745 So. 2d 1004, 1005 (Fla. 3d DCA 1999) (quoting *City of Miami Beach v. Sunset Islands 3 & 4 Prop. Owners Ass'n*, 216 So. 2d 509, 511 (Fla. 3d DCA 1968)), fits snugly within that category of cases not subject to sovereign immunity because the gravamen of the action is that the respondent's actions or inactions are undertaken in *defiance of* the sovereign—that is, the government actor "is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden," *Larson*, 337 U.S. at 689.  It stands to reason, therefore, that courts would recognize that sovereign immunity cannot serve as a defense to such a claim.  *Cf. Acad. for Positive Learning, Inc. v. Sch. Bd. of Palm Beach Cnty.*, 359 So. 3d 767, 772 (Fla. 4th DCA 2023) (Levine, J., concurring specially) ("[T]he action of the school board in the distribution of the funds raised by the 2018 referendum is the type of ministerial action that is not subject to the defense of sovereign immunity."); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1234 (10th Cir. 2005) ("[A]pplication of the mandamus remedy to require a public official to perform a duty imposed upon him

13

in his official capacity is not limited by sovereign immunity."); *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 901 (D.C. Cir. 1996) ("If a plaintiff seeks a writ of mandamus to force a public official to perform a duty imposed upon him in his official capacity, however, no separate waiver of sovereign immunity is needed."); *Beale v. Blount*, 461 F.2d 1133, 1137 (5th Cir. 1972) ("The remedy of mandamus directed against an agency has been regarded as an exception to the doctrine that suits may not be maintained against the United States without its consent." (citing *Clackamas County v. McKay*, 219 F.2d 479 (D.C. Cir. 1954), *vacated as moot*, 349 U.S. 909 (1985))); *Heath v. O'Malley*, No. 05-61976-civ, 2006 WL 6617128, at *3 (S.D. Fla. Feb. 6, 2006) ("Significantly, application of the mandamus remedy to require a public official to perform a duty imposed upon him in his official capacity is not limited by sovereign immunity.").

Consistent with above cited case law enunciating the longstanding principles confining the ambit of sovereign immunity, case law illustrating the historical conception of the mandamus writ further explains why sovereign immunity cannot be a defense to a mandamus proceeding. "The power which the court exercises by the writ of mandamus to compel a public officer to correctly perform the ministerial duties pertaining to his office and which by law he is required to perform . . . rests in the sovereign power of the state, and is confided to the judicial branch of the government." *State ex rel. Peacock v. Latham*, 170 So. 475, 479 (Fla. 1936) (quoting *State ex rel. Knott v. Haskell*, 72 So. 651, 651 (Fla. 1916)). Mandamus is better understood not as a suit *against* the sovereign but rather a suit *brought by* the sovereign to require *a governmental actor*—not the sovereign itself—to perform a duty the official is indisputably required to perform.

The modern writ of mandamus may be defined as a command issuing from a common-law court of competent jurisdiction, in the name of the state or sovereign, directed to some corporation, officer, or inferior court, requiring the performance of a particular duty therein specified . . . .

. . . It seems, originally, to have been one of that large class of writs or mandates, by which the sovereign of England directed the performance of any desired act by his subjects, the word '*mandamus*' in such writs or letters missive having doubtless given rise to the present name of the writ.

*Mandamus*, Black's Law Dictionary (11th ed. 2019) (quoting James L. High, *A Treatise on Extraordinary Legal Remedies* § 2, at 5–6 (1884)). While petitions for writ of mandamus were historically brought in the name of the State, the supreme court has since dispensed with that formality for the enforcement of a private right, reasoning that in such cases "the State is not a necessary party, and all proceedings should be conducted in the name of the actual parties in interest." *Fla. Indus. Comm'n v. State ex rel. Orange State Oil Co.*, 21 So. 2d 599, 600–01 (Fla. 1945) (citing *State ex rel. Davis v. Atl. Coast Line R.R. Co.*, 116 So. 48, 50 (Fla. 1928)).

For similar reasons, sovereign immunity would not shield a government actor from a petition for quo warranto. The term "quo warranto" means "by what authority." *Fla. House of Reps. v. Crist*, 999 So. 2d 601, 607 (Fla. 2008). A writ of quo warranto is a common law remedy to determine "whether a state officer or agency has improperly exercised a power or right derived from the State." *Id.*; *see also Whiley v. Scott*, 79 So. 3d 702, 708 (Fla. 2011) (framing the issue in a quo warranto proceeding as "whether the Governor has overstepped his constitutional authority"); *State ex rel. Landis v. Prevatt*, 148 So. 578, 579 (Fla. 1933) (describing "the nature of quo warranto [a]s a common-law remedy"); 65 Am. Jur. 2d *Quo Warranto* § 1 ("[Quo warranto] directs

15

the defendant to show by what authority he or she is acting.").  The very question asserted in a quo warranto proceeding is whether a state officer has exceeded his or her authority, necessarily implicating the concept of a governmental actor whose conduct is ultra vires.  *See, e.g., Detzner v. Anstead*, 256 So. 3d 820, 823 (Fla. 2018) (reversing a writ of quo warranto issued to the secretary of state because "Florida law is clear that the Secretary has the authority and duty to place proposed amendments on the ballot"); *Crist*, 999 So. 2d at 603 ("We hold that the Governor does not have the constitutional authority to bind the State to a gaming compact that clearly departs from the State's public policy by legalizing types of gaming that are illegal everywhere else in the state.").

Mandamus and quo warranto proceedings involve what is alleged to be conduct beyond the authority expressly conferred by law on a governmental actor, whose ultra vires conduct has brought it outside the protection from suit and liability enjoyed by the sovereign.  They are "suits for specific relief against officers of the sovereign[,] which are not suits against the sovereign" itself to which sovereign immunity could apply.  *Larson*, 337 U.S. at 689.

More recent decisional law recognizes these concepts in other circumstances.  These cases perpetuate similar treatment of a class of actions to which sovereign immunity is not a bar because the claims are not brought against the sovereign for liability arising from its sovereign actions but rather against derelict government actors premised upon ultra vires conduct in derogation of legal mandates that govern their authority.  For example, declaratory judgment actions are not barred by sovereign immunity if the gravamen of the claim concerns a matter otherwise not protected by sovereign immunity.  *See, e.g., Kohl v. Blue Cross & Blue Shield of Fla., Inc.*, 988 So. 2d 654, 657, 659 (Fla. 4th DCA

16

2008) (rejecting argument that sovereign immunity barred an action for declaratory relief of insurance rights "because th[e] suit is predicated on a contractual breach" and contract actions are not barred by sovereign immunity (citing *Pan-Am Tobacco*, 471 So. 2d at 5)); *Kempfer v. St. Johns River Water Mgmt. Dist.*, 475 So. 2d 920, 924 (Fla. 5th DCA 1985) (concluding that an action for declaratory relief to construe an easement granted to a state agency was not barred by sovereign immunity); *cf. Neapolitan Enters., LLC*, 185 So. 3d at 593 ("Declaratory judgment actions regarding ultra vires acts are recognized as to private actors and as to local governments." (first citing *Beau Monde, Inc. v. Bramson*, 446 So. 2d 164, 166–67 (Fla. 2d DCA 1984); then citing *Nat'l Rifle Ass'n of Am., Inc. v. City of S. Miami*, 812 So. 2d 504, 505–06 (Fla. 3d DCA 2002); and then citing *Town of Lauderdale-by-the-Sea v. Meretsky*, 773 So. 2d 1245, 1249 (Fla. 4th DCA 2000))).

Another example is when a government collects an unauthorized tax or fee. Because the funds were collected in violation of a "direct legislative mandate," sovereign immunity will not shield a government from a claim seeking a refund of those funds. *See Bill Stroop Roofing, Inc. v. Metropolitan Dade County*, 788 So. 2d 365, 367–68 (Fla. 3d DCA 2001) (rejecting sovereign immunity as a defense to "a county's refusal to obey a direct legislative mandate" through the collection of fees in derogation of a statute); *Parker v. Am. Traffic Sols., Inc.*, No. 14-civ-24010, 2015 WL 4755175, at *4 (S.D. Fla. Aug. 10, 2015) ("[U]nder Florida law, state actors are not immune from suit for unlawful monetary extractions."); *cf. Lee Mem'l Health Sys.*, 304 So. 3d at 61–62 (holding the trial court erred in refusing to apply sovereign immunity because "Lee Health did not refuse to follow a direct legislative mandate" but rather collected funds under a statute "that was declared unenforceable decades thereafter").

17

And conversely, when a direct legislative mandate requires a governmental entity to spend money but it refuses to do so, such mandate remains enforceable, and there is no reason to conclude that actions premised upon a violation of such legal directive are barred by sovereign immunity. *See Daly v. Marion County*, 265 So. 3d 644, 649 (Fla. 1st DCA 2018) ("Although the judiciary may not instruct an agency to exercise its *discretionary* spending, a court has authority to order an agency to comply with a legislative mandate requiring funds to be spent in a particular way. Otherwise, there could be no remedy if a state agency refused to comply with the legislature's authority to appropriate funds for a specific purpose." (emphasis in original) (citations omitted)); *Acad. for Positive Learning, Inc.*, 359 So. 3d at 773–74 (Levine, J., concurring specially) (reasoning that even in the context of "illegally retained monies" as opposed to "illegally extracted monies," "the refusal of the school board to follow a direct legislative mandate of a ministerial action subjects it to claims that are not barred by sovereign immunity").

The same underlying justification as for mandamus and quo warranto proceedings applies to those cases concerning a government's unlawful extraction or retention of funds or failure to pay funds that it is required by law to pay. *See, e.g., Houston*, 252 U.S. at 473 ("In the present case it is conceded, and properly conceded, that payment of the fund in question to the defendant Sanders is a ministerial duty, the performance of which could be compelled by mandamus."); *Sandegren v. State ex rel. Sarasota Cnty. Pub. Hosp. Bd.*, 397 So. 2d 657, 659 (Fla. 1981) (holding a county had a ministerial duty to fund mental health programs that was enforceable through mandamus); *Bd. of Cmm'rs of Escambia Cnty. v. Bd. of Pilot Cmm'rs of Port of Pensacola*, 42 So. 697, 703 (Fla. 1906) ("When an expenditure by a county is authorized by a

18

valid law, and the correctness of the amount due by the county is ascertained and approved as the laws directs, there being no question as to bona fides, it is the duty of the county commissioners to audit, approve, and pay the same, and such payment may be enforced by mandamus."); *Maloy*, 264 So. 3d at 371 (affirming trial court's issuance of a writ of mandamus compelling the clerk of a county to invest surplus funds as directed by the board of county commissioners); *Bd. of Cnty. Comm'rs Broward Cnty. v. Parrish*, 154 So. 3d 412, 414, 416 (Fla. 4th DCA 2014) (affirming trial court's issuance of a writ of mandamus compelling the board of county commissioners to fully fund an operation budget). Whether enforceable by mandamus, declaratory judgment, quo warranto, or other procedural vehicle, in actions premised upon conduct by a governmental actor in defiance of the legal strictures that govern its authority—for example, directives or prohibitions imposed by a "direct legislative mandate," *Bill Stroop Roofing*, 788 So. 2d at 367–68—the governmental respondent's ultra vires conduct takes it out of the ambit of the immunity it would enjoy if it had been acting as the sovereign. Consequently, such actions are not barred by sovereign immunity because they are "for specific relief against officers of the sovereign which are not suits against the sovereign." *Larson*, 337 U.S. at 689.

The only meaningful rebuttal the County lodges to the Hospitals' cited authorities is pointing out that the underlying statutes at issue in those decisions were general laws, not special laws. *See, e.g.*, *Sandegren*, 397 So. 2d at 659 (affirming writ of mandamus that compelled performance of a ministerial funding obligation under chapter 394, Florida Statutes (1977)); *Bill Stroop Roofing*, 788 So. 2d at 366–68 (reversing the trial court's application of sovereign immunity to a "direct legislative mandate" set forth in section 489.113(4)(a), Florida Statutes

19

(1994)); *see also Arnold v. Shumpert*, 217 So. 2d 116, 120 (Fla. 1968) ("[W]aiver of a county's sovereign immunity cannot be accomplished by local law.").  While it is true that the statutes at issue in those decisions were general laws, there has been no law cited for the proposition that only general laws may be enforced by mandamus whereas special laws cannot or for the proposition that only direct legislative mandates from general laws can be enforced whereas direct legislative mandates from special laws cannot.  Moreover, the cited cases that address sovereign immunity were decided based on the doctrine's inapplicability, not a *waiver*, so whether a general law was involved is immaterial.  *See, e.g.*, *Bill Stroop Roofing*, 788 So. 2d at 368 ("Thus we conclude that our governments are required to refund taxes and fees illegally exacted, and the doctrine of sovereign immunity is *inapplicable* thereto." (emphasis added) (footnotes omitted)).

It is against this backdrop of the common law of sovereign immunity that Florida's constitution provides that the legislature may enact "general law for bringing suit against the state as to all liabilities now existing or hereinafter originating."  Art. X, § 13, Fla. Const; *see Manatee County*, 365 So. 2d at 147 (agreeing with the argument of the county that sovereign immunity applies "unless the Legislature provides otherwise by general law").  If an action seeking to enforce a government actor's departure from the authority expressly conferred upon it by a direct legislative mandate or other law is not a "suit[] against the sovereign," *Larson*, 337 U.S. at 689, then it logically follows that the action is not a "suit against the state" within the meaning of our constitution so as to implicate sovereign immunity.

From case law such as that discussed herein, it can also be gleaned what was understood to constitute a "liabilit[y]," as that term is used in

20

the constitution, *see* art. X, § 13, Fla. Const, such that under the common law of sovereign immunity it could not form the basis of a lawsuit against the sovereign—that is, that for which sovereign immunity would be a viable defense but for the waiver contemplated in the constitution. In other words, decisional law in the variety of different contexts identified herein reflects that it is not a "liabilit[y]" for purposes of sovereign immunity to require the government to act within the scope of the authority conferred upon it by law and to comply with the legal mandates imposed upon it. *See id.*

An instructive illustration of what *is* a liability for purposes of sovereign immunity can be found when considering government tort liability. The legislature, recognizing that governmental acts giving rise to tort liability are within the ambit of sovereign immunity, enacted section 768.28, Florida Statutes, which provides a limited waiver of sovereign immunity for tort claims. *See* § 768.28(1), Fla. Stat. (2011) ("In accordance with s. 13, Art. X of the State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act."). And even then, tort liability has only been partially waived for the government's "operational" decisions—those that "implement policy"—as the government remains completely immune from tort liability for its "planning" decisions—those that are "discretionary" and require "basic policy decisions." *See Com. Carrier Corp. v. Indian River County*, 371 So. 2d 1010, 1021–22 (Fla. 1979). Either way, both operational and planning decisions are those to which sovereign immunity applies as to any resulting tort liability, unless the decision at issue falls within the scope of the statutory waiver in section 768.28. On this point, Venice HMA misplaces reliance on the distinction between operational decisions

21

that implement policy and discretionary planning decisions that create policy. Mistakenly conflating the concept of "ministerial duties" and "operational acts" in its brief, Venice HMA compounds its error by presuming that sovereign immunity is inapplicable to both. But operational decisions are within the ambit of sovereign immunity just as are discretionary planning decisions. *See id.* In other words, contrary to Venice HMA's argument, cases asserting tort liability arising from the operational decisions of a state defendant are permitted not because they are actions to which sovereign immunity does not apply but rather because the sovereign immunity that would apply has been waived by statute. And the reason sovereign immunity is not a defense to a mandamus petition or, as in this case, a suit brought to enforce a direct legislative mandate is not because they are based on nonoperational decisions; rather, it is because they are not tort claims at all but rather are among the types of action for which a waiver of sovereign immunity is not necessary because it does not apply in the first place.

Sovereign immunity does apply to the types of governmental actions giving rise to tort liability because a tort claim is seeking redress for conduct that breaches the general duty of care but which was being undertaken within the scope of the government actor's official charge in accordance with the authority conferred upon it by law. In other words, a tort claim is not asserting that the government actor is acting outside his or her legal authority, failing to comply with a direct legislative mandate, or failing to perform a ministerial duty. When he or she committed the tortious action, the government actor was acting under the auspices of his or her role as an agent of the sovereign, undertaking authorized duties not in contravention of the legal limits of his or her power and not failing to act in defiance of a clear legislative mandate.

22

Rather, the theory in a tort case is that the government actor breached the general duty of care, giving rise to liability on the part of the sovereign because the actions caused harm to the plaintiff. For example, if a government employee, within the scope of his duties, collides his vehicle into a pedestrian, the gravamen of the negligence complaint is not that the driver was ignoring a legislative mandate or that his conduct was outside his legal authority to act. To the contrary, the government actor was within his authority, for example, to drive a truck through the city park to inspect the playground equipment or empty the waste bins. But the government is liable because the governmental actor, while carrying out his duty under the law, breached the duty of care he and any other human being driving an automobile owes to pedestrians, which caused harm to the plaintiff. That is liability that is protected by sovereign immunity that must be waived under the constitutional provision that allows "suits against the state as to all liabilities" to be allowed by "general law." *See* art. X, § 13, Fla. Const.; *cf. Larson,* 337 U.S. at 689–90 ("The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. . . . It is important to note that in such cases the relief can be granted, without impleading the sovereign, only because of the officer's lack of delegated power. A claim of error *in the exercise of that power* is therefore not sufficient." (emphasis added)).

That a claim for breach of an express, written contract constitutes a liability for which sovereign immunity would otherwise apply absent the judicially implied waiver makes sense for similar reasons. *See Pan-Am Tobacco,* 471 So. 2d at 5–6; *see also Schwefringhaus,* 188 So. 3d at 844. Like tort claims, the focus of a contract claim is not that the government was acting ultra vires but rather that the government

23

breached the terms of a contract. Operating within legislatively conferred authority to enter into contracts, a governmental entity's exercise of that authority might give rise to new duties—performance obligations under the terms of a contract—the violation of which gives rise to liability that would otherwise be protected by sovereign immunity absent the judicially implied waiver. As it is for lawsuits asserting tort liability, breach of contract claims against the government are not premised on the theory that the defendant was acting ultra vires or failing to act in defiance of a legislative mandate. Rather, liability was created by violation of the obligations of a contract just as liability arose when a governmental tort defendant breached the general duty of care.

Here, as in *Bill Stroop Roofing*, the gravamen of the Hospitals' complaint is that the County has violated a direct legislative mandate in the Special Act by refusing to reimburse them for the cost of providing medical care to indigent persons. It cannot be reasonably susceptible to question that the legislature expressly conferred a mandatory duty upon the County under the Special Act's indigent care provision. If the Hospitals submit certified lists with the required information, then the County

> *shall*, within 45 days after the receipt of such certified list of medically indigent patients with the hospital charges, make remittance . . . of the sum total of the amount shown on the certified list to be the amount owing . . . for the hospital services and care rendered to the medically indigent persons during the month embraced in said certification.

Ch. 2003-359, § 8(9), at 6, Laws of Fla. (emphasis added). The Special Act describes the County's duty in mandatory terms (that the County "shall . . . make remittance" of money), describes how the County is supposed to fulfill that duty (by paying the amount shown on the certified list), and describes when the County is supposed to fulfill that

24

duty (within forty-five days of its receipt of the certified list). *Id.*; *see also Sanders v. City of Orlando*, 997 So. 2d 1089, 1095 (Fla. 2008) ("The word 'shall' is mandatory in nature."). The gravamen of the Hospitals' claims is that the County, in defiance of a legal mandate requiring action, is failing to act—that the governmental defendant's inaction is ultra vires, and therefore it is not being sued in the capacity of a sovereign but rather as a derelict governmental actor which must be compelled to conform its conduct to the prescriptions of the law. The Hospitals' claim to enforce the County's refusal to comply with the Special Act is therefore not a suit premised on liability of the sovereign, and sovereign immunity does not shield the County from that cause of action. Accordingly, the trial court erred by declaring in its final judgment that the County's sovereign immunity bars the Hospitals' claims under the Special Act's indigent care provision as a matter of law.

## III.

On the other hand, competent substantial evidence supports the trial court's determination that the Hospitals did not prove that they were entitled to reimbursement for the prior invoices they began submitting to the County in 2008. Although the trial court erroneously concluded that sovereign immunity barred the Hospitals' claims, the trial court further concluded that even if the Hospitals had established that an express, written contract existed between the parties, the Hospitals' performance did not mirror the terms of the Special Act to constitute acceptance by performance. Therefore, even though we need not reach contract-specific issues for the purpose of the waiver of sovereign immunity, we have sufficient factual findings from the trial court for our appellate review regarding the Hospitals' compliance with the terms of the Special Act.

25

The trial court found numerous reasons why the Hospitals did not comply with the terms of the Special Act. We address only the trial court's finding that the Hospitals' certified lists did not contain "itemized charges for the hospital services and care for each of said medically indigent persons," a reason sufficient to support the trial court's conclusion that the Hospitals were not entitled to reimbursement for the prior invoices they submitted to the County.

As can be discerned from their briefs, the Hospitals raise two arguments for why they met the "itemized charges" requirement. First, they argue that their certified lists contained "the total charges associated with each separate patient." That is true, but that is not what the Special Act requires. The Special Act requires "itemized charges *for the hospital services and care*" of each medically indigent patient. Ch. 2003-359, § 8(9), at 6, Laws of Fla. (emphasis added). In other words, the certified lists must itemize the charges for each service rendered to a particular patient, not aggregate all of the charges into a single, total number per patient.

Second, the Hospitals argue that they provided "detailed billing statements containing breakdowns of the charges associated with each patient's hospital stay" to the County during discovery. But the Special Act requires the certified lists to be submitted by the fifteenth day of the month that follows the month in which the treatment to the medically indigent persons was provided. *Id.* For example, if the Hospitals seek reimbursement for treatment provided to medically indigent persons in April, the certified list must be submitted by May 15. Because the Hospitals did not timely submit certified lists containing "itemized charges for the hospital services and care" of each patient, the trial court's conclusion that they failed to comply with the terms of the

26

Special Act for purposes of obtaining reimbursement of their invoices is supported by competent substantial evidence and must be affirmed.

Affirmed in part; reversed in part; remanded with instructions.

MORRIS and BLACK, JJ., Concur.

_____

Opinion subject to revision prior to official publication.